THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DIANE BEITER, Appellant.

Fourth Department, November 13, 1980

**APPEARANCES OF COUNSEL**

*Edward J. Nowak (William Pixley* of counsel), for appellant.

*Lawrence T. Kurlander, District Attorney (Kevin Moore* of counsel), for respondent.

**OPINION OF THE COURT**

SIMONS, J.

The issue on this appeal is the sufficiency of the People's evidence to sustain the jury's finding that defendant was guilty of criminal negligence in causing the death of David A. Schifano in a motor vehicle accident (Penal Law, § 125.10).

The accident happened at about 2:00 A.M. on December 4, 1977. Defendant had been working the previous evening as a waitress in the Country House Restaurant in East Rochester. At about 11:00 P.M., after completing work, she went to a discotheque the floor below the restaurant and there she visited with friends until she left between 1:30 A.M. and 2:00 A.M. to drive home alone in her 1968 Chevrolet sedan. While at the discotheque, she had two or three "Singapore Slings".

The accident occurred on Plank Road in Penfield, New York, near the Landmark Inn. Plank Road is a two-lane paved highway, straight and level for a considerable distance from the scene of the accident in both directions. On the night of the accident, the weather was clear and the road was dry. Defendant had entered Plank Road by turning right from an intersecting highway about .2 of a mile west of the scene and she was proceeding east when the accident occurred. There was no street lighting in the area at the time but there was some illumination of the road from a neon beverage sign in the window of the inn and lights in the parking lot behind it. Three or four vehicles were parked on the shoulder of the road near the inn.

Immediately before the accident, decedent and his companion, Leonard Colantoni, left the Landmark Inn to go home. They started across Plank Road walking north to south to enter Colantoni's van which was parked on the south side of the road.

When Colantoni was in the road, about 10 feet ahead of decedent, he observed the headlights of defendant's car to the west. He watched the car as it approached them and then yelled to decedent to hurry because the car was traveling fast. After reaching the side of the road, Colantoni heard a loud noise, saw broken glass and saw something fly and hit the road as the car continued on without stopping. Colantoni

estimated defendant's speed at 60 miles per hour, "maybe more".

After the accident, Colantoni found articles of decedent's clothing in the road, his body in a ditch approximately 141 feet from the point of impact and decedent's severed leg about 20 feet from the body. Decedent apparently was killed instantly by the impact. The pathologist testified that there were several major injuries and that decedent's blood alcohol level was .11% by weight.

The only other witness to the accident was defendant. She testified that she was proceeding easterly on Plank Road at 40 miles per hour, that there was no other traffic on the highway and that just after passing the inn she saw two men about 40 feet in front of her, one off the road to her right, and the other just behind him. As she approached, she drove her car slightly to the left to avoid them. She did not realize that she had hit anyone but she slowed down after noticing that her radio went off and her windshield was cracked. Nevertheless, she drove on home and it was there, after examining the damage to her car, that she realized that she had hit someone and called the police. Colantoni had testified that defendant did not apply her brakes and that he did not hear a horn at any time. Defendant admitted that she did not apply her brakes and she could not recall sounding her horn. Defendant took a breathalyzer test at 4:50 A.M. and it resulted in a reading of .07%.

Defendant was indicted on three counts: criminal negligence; leaving the scene of an incident (Vehicle and Traffic Law, § 600, subd 2); and operating a motor vehicle under the influence of alcohol or drugs (Vehicle and Traffic Law, § 1192, subd 1). The criminal negligence count charged defendant with causing decedent's death "by operating a motor vehicle while under the influence of alcohol at an excessive rate of speed on a straight level road and thereby failing to observe" decedent, although there was no obstruction to her vision. The jury convicted defendant of criminal negligence and leaving the scene but acquitted her of driving while under the influence of alcohol.

Section 125.10 of the Penal Law provides that "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person." A person acts with criminal negligence with respect to a result or circumstance "when he fails to perceive a substantial and

unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law, § 15.05, subd 4).

Considering the evidence in the light most favorable to the People, as we must, the proof established that defendant was operating her automobile at night on a straight and level rural road, partially illuminated by the lights of a nearby tavern, at a speed of 60 miles per hour in a 40 mile-per-hour zone, at a time when there were three or four other cars parked in the vicinity on the shoulder of the highway; that she saw two men when they were approximately 40 feet in front of her, swerved slightly to the left to avoid hitting them but struck one man, damaging the right headlight, right front fender and right side of the windshield of the car. We do not think that this evidence establishes a "gross deviation" from the standard of care of a reasonable person under the circumstances.

The People place considerable emphasis on defendant's failure to sound her horn or apply her brakes after she observed the pedestrians. Defendant was confronted suddenly by an unanticipated situation, however, and even if her spontaneous reaction to the emergency was wrong, it did not constitute a gross deviation from the standard of reasonable care. Under familiar rules, if an emergency is the result of defendant's own inattention it may not serve as an excuse for her negligent conduct. But the existence of the emergency situation does provide a different standard of reasonableness for judging her actions after the emergency was created. "It is * * * not the conduct after the emergency has arisen which is *not* excused, but the prior negligence" (Prosser, Torts [4th ed], § 33, p 170; emphasis added). Thus, although defendant may have failed to exercise the required care before she observed the pedestrians, her failure to sound her horn or brake after being confronted with the emergency cannot serve to magnify her criminal culpability and it is at least arguable that her swerve to the left to avoid striking Schifano was the most reasonable course of action under the conditions.

The issue, then, is whether defendant's illegal speed and her failure to perceive the danger, considering the traffic, road conditions and lighting conditions existing that night constituted criminal negligence.

In *People v Haney* (30 NY2d 328) the Court of Appeals, recognizing the difficulty of clarifying the elements necessary to establish criminal negligence, observed that "two main considerations should be emphasized. Firstly, criminal liability cannot be predicated upon every careless act merely because its carelessness results in another's death; and, secondly, the elements of the crime 'preclude the proper condemnation of inadvertent risk creation unless "the significance of the circumstances of fact would be apparent to one who shares the community's general sense of right and wrong".' (Model Penal Code, Tent. Draft No. 9, *supra,* at p. 53, citing Hart, The Aims of the Criminal Law, 23 Law & Contemp. Prob. 401, 417.)" *(People v Haney, supra,* at p 335.) The court noted that the quantum of proof required for criminal negligence is " 'appreciably greater than that required for ordinary civil negligence by virtue of the "substantial and unjustifiable" character of the risk involved and the factor of "gross deviation" from the ordinary standard of care.' (Commission Staff Notes, Gilbert Criminal Code and Penal Law [1971], *supra,* p. 2-248; cf. Prosser, Law of Torts [4th ed.], § 31; Restatement, Torts, § 282.)" *(People v Haney, supra,* at pp 333-334.)

In *Haney* the Court of Appeals tested the legal sufficiency of an indictment, not the evidence after trial. Defendant Haney was accused of striking and killing a pedestrian in mid-intersection while driving an automobile through a red light on a city street at a speed of 52 miles per hour during daylight hours. The court held the indictment sufficient and stated that it was for the trier of the facts to evaluate defendant's conduct and his failure of perception and to determine whether defendant's conduct constituted a gross deviation from the standard of reasonable care (and cf., also, *People v Soto,* 44 NY2d 683 [drag racing on a city street]).

By contrast, this defendant was driving down a straight and level highway in a sparsely populated area with her lights on. The area was dark and the road free of other traffic, circumstances in which she could reasonably expect that anyone crossing the road would see her headlights and conduct themselves accordingly. Seeing the victim from 40 feet away, she swerved, albeit not enough, to avoid striking him. Such conduct does not constitute a gross deviation from the ordinary standard of care held by those who share " 'the community's general sense of right and wrong' " *(People v Haney, supra* p

335; see *People v Roberts,* 72 AD2d 954; *People v Lewis,* 53 AD2d 963).

The judgment should be modified by reversing the conviction for criminal negligence, dismissing the first count of the indictment charging that crime and vacating the sentence and as so modified the judgment should be affirmed.

HANCOCK, JR., J. (dissenting). I respectfully dissent.

The essence of the crime of criminally negligent homicide, in the language of the Court of Appeals in *People v Haney* (30 NY2d 328, 334-335) is "the failure to perceive the risk in a situation where the offender has a legal duty of awareness. It, thus, serves to provide an offense applicable to conduct which is obviously socially undesirable. '[It proscribes] conduct which is inadvertent as to risk only because the actor is insensitive to the interests and claims of other persons in society.' (Model Penal Code, Tent. Draft No. 9, *supra,* at p. 53.) The Legislature, in recognizing such conduct as criminal, endeavored to stimulate people towards awareness of the potential consequences of their conduct and influence them to avoid creating undesirable risks. (See Wechsler and Michael, A Rationale of the Law of Homicide, 37 Col. L. Rev. 701, 749-751; 64 Col. L. Rev. 1469, 1538; Model Penal Code, Tent. Draft No. 4, *supra,* at pp. 126-127.)"

As stated in *People v Haney (supra,* p 335), it is ordinarily left to the trier of the facts to determine whether under the circumstances of the particular conduct in question "the act or acts causing death involved a substantial and unjustifiable risk, and whether the failure to perceive it was such as to constitute a gross deviation from the standard of care which a reasonable man would have observed under the same circumstances".

In my opinion, there is in this record ample evidence from which a jury could have concluded that defendant, after consuming alcoholic beverages, drove her automobile at night at a dangerously high rate of speed and without keeping a careful lookout past a lighted restaurant the glare from which impaired her vision and where there was a likelihood of pedestrian traffic, and that by doing so she created a substantial and unjustifiable risk; that defendant failed to perceive that risk; and that the failure to perceive it constituted a

gross deviation from the standard of care that a reasonable person would have observed in the situation.*

To support a finding of excessive speed by the defendant, the jury had before it not only the testimony of the eyewitness that defendant's car was "hauling ass" and going "60 miles an hour, maybe more" but the physical evidence of high speed from the substantial damage to the automobile and the multiple fractures and massive injuries to the deceased resulting from an impact of such force as to sever the aorta in three places, wrench the right leg completely away from the pelvis and propel deceased's body a distance of 141 feet from the point of impact (see *Malloy v Trombley*, 50 NY2d 46, 51, regarding evidence of tremendous impact as indicating a high rate of speed), as well as defendant's admissions on cross-examination and in her statement to the police that she was in a hurry and that she did not know how fast she was traveling. Based on defendant's own statements, the jury could have inferred that from her frequent trips past the restaurant she was either aware or should have been aware of the facts that the glare from the restaurant would reduce her ability to see and that there was a likelihood that there would

---

* The court, in its main charge, put the issue to the jury in part as follows: "What the ordinary careful prudent person under the circumstances which Miss Beiter found herself, driving down that road that time of day, being familiar with the road, being familiar with the Landmark Inn, going at the speed she was going in the condition in which she was, would the ordinary careful and prudent person enter into that situation? * * * Was her action in proceeding into that situation, not realizing that a risk existed, of being confronted with people in the highway * * * and the ordinary careful and prudent person would have realized that that risk existed and her failure to perceive, if she did fail to perceive, constituted a gross deviation from the conduct that an ordinary careful and prudent person would take. Those are what you are going to have to answer here in determining whether or not she was criminally negligent." And in two subsequent charges given in response to the jury's requests for further explanations of the crime of criminally negligent homicide the court stated: "Again, as I said, the risk the criminally negligent person takes must be so extreme and serious and the fact that she did not realize the risk was there proves that she was grossly careless in contrast to deviating from conduct that a reasonable person would have. Would a reasonable person knowing the Landmark Inn was there *·* * and that people crossed the road from their cars to and from the Landmark Inn * * * drive into and through that area in the manner in which she did or as you find she did"? and further: "Was there a real, important risk and an inexcusable risk that someone would be injured or killed if she drove through that area, depending upon how you find that she did drive through it relating, of course, to speed, whether or not her condition was affected by alcohol, the nature of the highway, not deviating from her path, if she didn't deviate from it?" There were no exceptions and defendant made no objections to the charge and no requests. Nor does she take issue with any part of the charge on appeal.

be parked cars and pedestrian traffic on the highway in front of the restaurant. Further, defendant's testimony that she did not see the cars which were parked on the highway, did not observe the two pedestrians until she was 40 feet away, heard no noise from the impact, saw nothing hit the windshield despite the extensive damage it sustained, and that she was not immediately aware that she had hit someone would, taken together, support a conclusion by a trier of the facts either that defendant's senses and powers of observation were impaired or that she was not paying attention and keeping a careful lookout.

The jury could have inferred solely from defendant's conduct under the circumstances that she must have been oblivious to the substantial risks she was creating by driving her automobile in the manner described. There is, moreover, direct evidence that defendant failed to perceive these risks; i.e., her testimony that she saw no "problem at all in getting by" the pedestrians when she saw them for the first time in front of her car at a distance of 40 feet and that she did not sound her horn or apply her brakes but "just swerved over a little bit" to the left. I cannot agree with the majority that, as a matter of law, defendant's failure to perceive the risks did not constitute a gross deviation from the ordinary standard of care held by one who shares the community's general sense of right and wrong (see *People v Haney,* 30 NY2d 328, 335, *supra).* In my opinion, it was for the jury to " 'evaluate the actor's failure of perception and determine whether, under all the circumstances, it was serious enough to be condemned.' (Model Penal Code, Tent. Draft No. 4, [April 25, 1955], at p. 126; see, also, Moreland, A Re-Examination of the Law of Homicide in 1971: The Model Penal Code, 59 Ky. L. J. 788, 828.)" *(People v Haney, supra,* p 335.)

Finally, I must disagree with the majority's reliance on the emergency rule. First, the emergency doctrine was not charged; nor was there any request for such charge. Second, the emergency, if there was one, was in large measure the product of defendant's own conduct in driving too fast under the prevailing conditions without keeping a sufficiently careful lookout. Under such circumstances, the rule is inapplicable (see *McAllister v Adam Packing Corp.,* 66 AD2d 975; *Kinsfather v Grueneberg,* 47 AD2d 789, 790). Third, the gravamen of the charge against defendant does not lie in her negligent actions or omissions after she recognized the emergency but

rather in her failure to perceive the risks in operating her automobile under the prevailing circumstances in a manner which contributed to the emergency. The emergency rule, even if applied, could not exonerate her from criminal liability for her pre-emergency failures and omissions.

CARDAMONE, J. P., CALLAHAN and MOULE, JJ. concur with SIMONS, J.; HANCOCK, JR., J., dissents in an opinion.

Judgment modified, on the law and facts, and as modified affirmed, in accordance with opinion by SIMONS, J.