THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STEPHEN GARBARINO and JEANNE GARBARINO, Respondents.

Third Department, December 14, 1989

APPEARANCES OF COUNSEL

*James B. Canfield, District Attorney (Nancy D. Snyder* of counsel), for appellant.

*Donald Shanley* for Stephen Garbarino, respondent.

*E. Stewart Jones (Peter J. Moschetti, Jr.,* of counsel), for Jeanne Garbarino, respondent.

### OPINION OF THE COURT

HARVEY, J.

On the evening of January 18, 1988, 15-year-old Justin Russell was permitted and encouraged by defendants, who are his mother and stepfather, to consume at least 25 ounces of alcohol as the family sat around the kitchen table of their home in the Town of East Greenbush, Rensselaer County. The boy became highly intoxicated and began to vomit. This ultimately led to his dying of cardiopulmonary failure due to "aspiration of gastric contents". At the time of his death Russell had a blood-alcohol level of .41%. Thereafter, defendants were indicted by the Grand Jury for the crimes of criminally negligent homicide, endangering the welfare of a child and reckless endangerment in the second degree. Defen-

dants each moved to dismiss the indictment, arguing that there was insufficient proof as a matter of law to sustain each of the counts of the indictment. County Court agreed and the People now appeal the dismissal of the indictment.

At issue in this case is whether County Court properly dismissed the entire indictment on the ground that it was legally insufficient. Legally sufficient evidence is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1]). For purposes of a Grand Jury proceeding, "legally sufficient evidence means prima facie evidence, not proof beyond a reasonable doubt" *(People v Reyes,* 148 AD2d 756, 758, *lv granted* 74 NY2d 746). The test to be applied " 'is whether the evidence before the Grand Jury if unexplained and uncontradicted would warrant conviction by a trial jury' " *(People v English,* 138 AD2d 831, quoting *People v Pelchat,* 62 NY2d 97, 105). An indictment is presumptively valid and the evidence in support of it must be viewed in the light most favorable to the People *(see, People v Moquin,* 142 AD2d 347), with the burden of proving the insufficiency of the indictment resting on a defendant *(People v Reyes, supra).* In our view, the evidence adduced by the People on all three counts of the indictment met the foregoing requirements.

Looking first to count one of the indictment, which charged defendants with criminally negligent homicide, a class E felony, Penal Law § 125.10 states that "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person". Criminal negligence is defined as follows: "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]). The crime of criminally negligent homicide essentially "involves the failure to perceive [a substantial and unjustifiable risk] in a situation where the offender has a legal duty of awareness. It, thus, serves to provide an offense applicable to conduct which is obviously socially undesirable" *(People v Haney,* 30 NY2d 328, 334).

The crime of criminal negligence involves an objective

examination of a defendant's underlying conduct creating a risk combined with his subjective mental state, i.e., his failure to perceive the risk where there is a legal duty of awareness *(see, People v Fitzgerald,* 45 NY2d 574). Significantly, the underlying conduct creating the risk varies from case to case *(see, supra)* and "depends, of course, *entirely on the circumstances of the particular conduct" (People v Haney, supra,* at 335 [emphasis supplied]). Therefore, determining whether a defendant's conduct rose to the level of culpability necessary to establish criminally negligent homicide is generally a question that must be left to the trier of fact to decide based upon all of the circumstances *(People v Haney, supra,* at 335; *see, People v Graham,* 122 AD2d 345, *lv denied* 68 NY2d 914).

Here, the evidence presented to the Grand Jury sufficiently established that defendants supplied and encouraged their 15-year-old son to drink a minimum of 27 to 30 ounces of 80-proof alcohol which Russell consumed in approximately a 1-to-2-hour time span. The medical expert who testified before the Grand Jury stated that Russell's blood-alcohol level of .41% was dangerously high, especially when the average level in fatal cases of alcohol toxicity or overdose for nonalcoholics is .40%. In fact, the expert stated that even a seasoned alcoholic would be in danger with that amount of alcohol in the bloodstream. Significantly, the autopsy showed that Russell's liver was perfectly healthy, indicating he was not a heavy drinker. The reason for this extraordinary drinking bout is not clear from the Grand Jury evidence. From the information presented, however, it appears that the family began drinking in response to an unspecified "family crisis". Other information alternatively indicates that the drinking bout was either instigated by or later developed into a "contest" between Russell and his stepfather over who could hold their liquor better.

■ Viewing this evidence in the light most favorable to the People, we find it legally sufficient to support an indictment of criminally negligent homicide against defendants. In other words, we cannot say, as a matter of law, that the supplying of at least 25 ounces of 80-proof alcohol to a 15 year old over such a short time span did not create "a substantial and unjustifiable" risk of death (Penal Law § 15.05 [4]). Nor can we conclusively say that the disregarding of that risk under these circumstances did not constitute a gross deviation from the standard of conduct that a reasonable person would have observed in a similar situation *(see,* § 15.05 [4]).

Many cases where such a finding has been made as a matter of law are easily distinguishable from the instant one on their facts and usually involve situations of clear-cut carelessness, ill chance or errors in judgment that did not cross the concededly muddy threshold dividing civil and criminal liability *(see, e.g., People v Johnson,* 131 AD2d 697; *People v Erby,* 97 AD2d 380; *People v Futterman,* 86 AD2d 70). The case of *People v Pinckney* (38 AD2d 217, *affd* 32 NY2d 749), cited by defendants, is also distinguishable. In that case it was held that a defendant could not be convicted of criminally negligent homicide upon a mere showing that the defendant sold heroin to an adult who died of an overdose after injecting the heroin by instruments supplied by the defendant. The court noted that it is a matter of common knowledge that an injection of heroin does not generally cause death and, therefore, the risk of death created was insufficient to hold the defendant criminally liable. While County Court correctly stated in the instant case that "[n]ot everyone who drinks and drinks to excess aspirates and as a result asphyxiates him or herself", it cannot be disputed from the medical evidence presented that the risk of such a death occurring is greatly increased when an individual consumes the amount of alcohol ingested by the deceased in this case *(see, People v Cruciani,* 44 AD2d 684, *affd* 36 NY2d 304). The additional aggravating circumstances in this case are what distinguish it from *Pinckney (cf., People v Cruciani,* 36 NY2d 304, *supra)* and demand a resolution of the factual questions by a jury.

■ Next, we turn to the count of the indictment charging defendants with reckless endangerment in the second degree. A person is guilty of this crime when he or she "recklessly engages in conduct which creates a substantial risk of serious physical injury to another person" (Penal Law § 120.20). A person acts "recklessly": "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto" (Penal Law § 15.05 [3]). Thus, given the proposition that encouraging a 15 year old to ingest over 25 ounces of alcohol in a 1-to-2-hour time span created a "substantial and unjustifi-

able risk" (Penal Law § 15.05 [3]), the disregarding of which constitutes a "gross deviation from the standard of conduct that a reasonable person would observe" (Penal Law § 15.05 [3]), the issue distills here to whether defendants were "aware of" and did "consciously disregard" this risk. An issue of fact has been created by the same evidence referred to in our discussion of the first count.

■ Finally, we are similarly of the view that County Court erred in dismissing the remaining count in the indictment against defendants alleging endangering the welfare of a child, which is defined, in relevant part, as follows:

"A person is guilty of endangering the welfare of a child when * * *

"[h]e knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a male child less than sixteen years old" (Penal Law § 260.10 [1]).

There was sufficient evidence presented to the Grand Jury to support the theory that defendants' acts were done "knowingly" within the meaning of Penal Law § 15.05 (2). When viewed in the light most favorable to the People, the evidence showed that defendants provided and encouraged the consumption of alcohol by Russell which directly resulted in his death *(see, People v Pawley,* 71 AD2d 307, 313). Therefore, a prima facie case of endangering the welfare of a child was presented.

Relying upon Penal Law § 260.20 (4), which contains an exclusion from prosecution for providing a minor with alcohol when it is supplied by a parent, County Court incorrectly dismissed this charge. That exemption from prosecution is specifically limited to that subdivision. Moreover, the exemption was clearly designed to avoid the prosecution of parents or guardians who provide minimal amounts of alcohol only *(see,* Hechtman, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 260.20, at 424 [1980 ed]) and was not meant to be extended to apply to instances such as those presented here.

KANE, J. P., CASEY, WEISS and MERCURE, JJ., concur.

Orders reversed, on the law, motions denied and the indictment reinstated in its entirety.