OPINION OF THE COURT
Alan D. Marrus, J.
Is the defendant, a 16-year-old student at Midwood High School,* properly chargeable with reckless manslaughter or the lesser charge of criminally negligent homicide upon Grand Jury evidence that he struck the victim, a 66-year-old school aide, who chased after him, kicked him and collapsed shortly thereafter, dying 17 hours later as a result of cardiac arrest due to cardiovascular arteriosclerosis? Mindful of the old axiom that “two wrongs do not make a right”, this court concludes that the defendant is not properly chargeable with these crimes.
The evidence presented to the Grand Jury establishes that the defendant was observed punching and slapping the victim numerous times in the school locker room. When the defendant ran away, the victim chased after him and caught him. The victim was then observed kicking the defendant. When the defendant again ran away down some stairs, the victim chased after him, went inside the dean’s office, came out and subsequently collapsed in front of that office. The victim was then *35 removed to a hospital where he died the next day from a heart attack.
The defendant testified in the Grand Jury that this incident arose when he tried to get into the locker room to get money for lunch from his coat and the victim attempted to deny Mm access. According to the defendant, he went into the locker room, was stopped and grabbed by the victim, who told the defendant he would call security. The defendant testified, “I was swinging my hand so he can release me, because I was scared.” The defendant gave details of Ms whereabouts before and after the incident which the District Attorney demonstrated were false, through the testimony of several teachers and prior inconsistent statements by the defendant.
The Medical Examiner testified that the victim’s only external injuries were “three small contusions on the right side of the face”. It was the Medical Examiner’s opinion that these contusions were consistent with the victim having been hit with a hand or fist. The initial examination of the victim revealed that he had died as a result of “cardiac arrest due to arteriosclerotic cardiovascular disease following physical assault”. The victim had an abnormally big heart, had had previous heart valve replacement and coronary bypass surgery, and had obvious scarring from a prior heart attack. The Medical Examiner concluded that: “What happened is that when you have a heart that is not functioning right, if you get mad, if you get scared, if somebody is — if you get into an argument, what will happen is that your heart will start beating faster than it should be * * * [His heart] could not take it and then it collapsed, he expired.”
Based on this evidence, the Grand Jury indicted the defendant for manslaughter in the second degree, attempted assault in the second degree, and attempted assault in the third degree. The grand jurors voted no true bill as to the proffered charge of manslaughter in the first degree, intentional manslaughter.
To establish reckless manslaughter there must be evidence when a defendant acts that i6he is aware of and consciously disregards a substantial and unjustifiable risk” that death will occur. (Penal Law § 15.05 [3].) “The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.” (Penal Law § 15.05 [3].)
In this case, there was no evidence presented to the Grand Jury to establish that the defendant was aware of the victim’s *36 heart condition during the attempted assault. Indeed, none of the victim’s co-workers who testified as witnesses in the Grand Jury offered any evidence that the victim was known to be in poor health or appeared to be ill on the day of the incident.
In Matter of Anthony M. (63 NY2d 270 [1984]), the Court of Appeals addressed the issue of what circumstances support a reckless manslaughter conviction where a victim is accosted and ultimately dies of a heart attack. There a 12-year-old child loitered at a subway station for more than half an hour, crouched behind an 83-year-old woman, grabbed her handbag, pulled the strap with such force that she was thrown to the sidewalk, and then he dragged her a short distance before the woman let go of her pocketbook. The victim, who suffered a fractured hip and bruises from the fall, died about 10 days later from a heart attack following hip surgery. Although she had had no symptoms of heart trouble, her medical history included hypertension, angina, an enlarged heart, and arteriosclerosis. The Court there determined the proof of reckless manslaughter to be sufficient because the juvenile assailant had “made a careful, conscious choice when, after a period of watching and waiting in front of the subway station, he marked as his intended victim a greyhaired, five-foot, two-inch, elderly woman, obviously selected from the passing crowd because of her condition, as the easiest prey.” (63 NY2d, at 281.) “[H]aving sought out such a victim”, the Court declared, “[the assailant] is to be held responsible for the unusual peril he created”. (Supra, at 281-282.)
Here there is no evidence that the defendant sought out his victim or made a careful, conscious choice to prey upon a particular individual. While it is not entirely clear what prompted the student to strike the school aide in the locker room, there is absolutely no indication of premeditation before the attack. The circumstances here are consistent with a sudden, impetuous encounter with a person who just happened to be there, not a calculated attack upon a weak and infirm victim. Indeed there is no question that the victim chased the defendant after he ran away, was able to catch him and then kicked the defendant who continued to flee.
Perhaps the most instructive case on this issue is People v Aponte (82 Misc 2d 283 [Sup Ct, Kings County 1975]). In that case the victim, a 49-year-old man suffering from a bad heart, was punched by the defendant following a traffic altercation. The defendant had challenged the victim to a fight, but the victim declined, informing the defendant that he “was a sick *37 man, suffering from a bad heart, and could not accept the challenge.” (Supra, at 284.) The defendant, nevertheless, punched the victim who became unconscious and died later of cardiac arrest at a hospital. There, unlike here, the defendant had notice of the victim’s heart condition before he struck.
Nor is the evidence presented to the Grand Jury here sufficient to support the lesser charge of criminally negligent homicide. The absence of any indication from the appearance of the victim that he was in ill health or public information about the existence of Ms heart condition detracts from a claim that the defendant failed to perceive a substantial and unjustifiable risk of death. This is not a case where a bar employee forcefully propels an intoxicated patron out the front door of a bar, down four steps to concrete pavement where that victim becomes unconscious and later dies from skull fractures and brain hemorrhage. (See, People v Graham, 122 AD2d 345 [3d Dept 1986].) Nor is this a case where parents supply and encourage their 15-year-old son to consume 27 to 30 ounces of 80-proof alcohol, raising the child’s blood alcohol level to .41% and resulting in the child’s death of heart failure. (People v Garbarino, 152 AD2d 254 [3d Dept 1989].) These cases provide examples of legitimate prosecutions for criminally negligent homicide. The striking of a 66-year-old man in the face which results in three small contusions and no other internal injury would not lead an average person to perceive a risk that cardiac arrest and death would result.
 As to the charge of attempted assault in the second degree, there is absolutely no evidence to establish that the defendant intended to cause serious physical injury to the victim. Since there was no evidence that the defendant struck particularly forceful blows or persisted in the attack when he was caught running away, the lack of an intent to cause serious physical injury is apparent. The sole remaining charge of attempted assault in the third degree, involving an intent to cause physical injury, is the appropriate charge given the evidence in this case.
Finally, it should be noted that a grand juror hearing this case wanted to know if any of the witnesses were “aware of tMs man being sick at any time and if he was always ailing?” (Grand Jury minutes, Jan. 7, 1998, at 15.) The prosecutor responded that “[t]he only relevance might be if Jose Hiraldo [the defendant], was aware, although as your legal advisor, that is not really relevant at this point.” (Ibid.) This response was erroneous and tainted the Grand Jury proceeding.
*38 The death of the victim here was a terrible tragedy. It was not, however, reasonably foreseeable by the defendant when he struck the victim during an argument. What the defendant did was very wrong and he should be held accountable for what he did. The evidence presented to the Grand Jury, however, does not establish that the defendant recklessly or negligently caused the death of the victim, nor does it establish that he intended to cause serious physical injury. The counts of manslaughter in the second degree and attempted assault in the second degree are, therefore, dismissed. The motion to dismiss attempted assault in the third degree is denied.

 The defendant transferred to a different high school after the incident in this case.