■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRETT CABRERA, Appellant. [835 NYS2d 747]—

Mercure, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered May 13, 2005, upon a verdict convicting defendant of the crimes of criminally negligent homicide (three counts), assault in the third degree and reckless driving, and of the traffic infractions of speeding (two counts), failure to keep right, driving left of a double yellow line and violation of junior license restrictions (two counts).

In June 2004, while driving four of his friends to a lake, defendant lost control of his vehicle and crashed into a telephone pole and tree, killing three of his four teenage passengers and fracturing the spine of the fourth. Witnesses indicated that the weather was clear and dry at the time of the accident, there were no obstructions on the rural road, and the vehicle had no mechanical defects or tire problems that would have caused the accident. Nevertheless, defendant lost control of the vehicle while negotiating a curve and dip in the roadway at the bottom of a hill, partially crossed into the left lane and then skidded off the road. Witnesses following defendant's vehicle indicated that he was speeding and did not slow down when approaching the curve in the road, and an accident reconstructionist estimated

that the vehicle was traveling between 70 and 72 miles per hour when it began to spin out of control. The posted speed limit on the road at the vicinity of the accident was 55 miles per hour and, a short distance before the curve, there was a hazard sign with a recommended speed limit of 40 miles per hour. In addition, defendant's passengers were not wearing seat belts and more than two of them were under 21 years old, violations of the restrictions on defendant's junior license (class DJ).

Defendant was charged with criminally negligent homicide (three counts), criminally negligent assault in the third degree and reckless driving, and the traffic infractions of speeding (two counts), failure to keep right, driving left of a double yellow line and violation of junior license restrictions (two counts). Following a jury trial, defendant was found guilty as charged and sentenced to an aggregate term of 1⅓ to 4 years in prison. Defendant appeals and we now affirm.

Defendant concedes that the People proved that he drove 72 miles per hour in a 55 mile-per-hour zone. He argues, however, that evidence of this speed alone is not legally sufficient to sustain the charges of criminally negligent homicide and criminally negligent assault in the third degree, and that the record contains no further admissible evidence with respect to those charges. Initially, we reject the People's contention that defendant failed to preserve this argument. Defendant moved for a directed verdict at the close of the People's case and, at the close of all the evidence, for dismissal of the criminal negligence charges on the ground that proof of speed alone is insufficient to support those charges. County Court reserved decision on defendant's motions and ultimately denied them after the verdict was rendered. Under these circumstances, the issue was effectively preserved (*see* CPL 290.10 [1]; *People v Payne*, 3 NY3d 266, 273 [2004]).

Turning to the merits, Penal Law § 125.10 provides that "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he [or she] causes the death of another person." Similarly, "[a] person is guilty of assault in the third degree when . . . [w]ith criminal negligence, he [or she] causes physical injury to another person by means of . . . a dangerous instrument" (Penal Law § 120.00 [3]). Criminal negligence with respect to a specified result is the "fail[ure] to perceive a substantial and unjustifiable risk that such result will occur . . . . The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]). At its essence, criminal

negligence involves both "blameworthy conduct creating or contributing to a substantial and unjustifiable risk" of injury or death (*People v Boutin*, 75 NY2d 692, 696 [1990]; *see People v Conway*, 6 NY3d 869, 872 [2006]) and "the failure to perceive the risk in a situation where the offender has a legal duty of awareness" (*People v Haney*, 30 NY2d 328, 334 [1972]; *see People v Ricardo B.*, 73 NY2d 228, 235 [1989]).

In enacting the criminal negligence statutes, which represented "a marked change from prior law," the Legislature "endeavored to stimulate people towards awareness of the potential consequences of their conduct and influence them to avoid creating undesirable risks" (*People v Haney, supra* at 334). Criminal negligence is a higher standard than ordinary negligence and, thus, " 'the carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence . . . [;] the carelessness must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong' " (*People v Conway, supra* at 872, quoting *People v Boutin, supra* at 695-696). Moreover, the failure to perceive the risk must be evaluated in the context of all the circumstances surrounding the act (*see People v Ricardo B., supra* at 236; *People v Haney, supra* at 335). Ultimately, the criminal negligence statutes "serve[ ] to provide an offense applicable to conduct which is *obviously socially un-desirable.* '[They proscribe] conduct which is inadvertent as to risk only because the actor is insensitive to the interests and claims of other persons in society' " (*People v Haney, supra* at 334, quoting Model Penal Code, Tent. Draft No. 9 [May 8, 1959], § 201.4, at 53 [emphasis added]).

Defendant correctly observes that the Court of Appeals has held, both under current Penal Law § 125.10 and predecessor statutes requiring a showing of either recklessness or "culpably negligent" conduct, that a conviction cannot be sustained "based solely on proof of excessive speed" (*People v Eckert*, 2 NY2d 126, 130 [1956], *overruled on other grounds People v Norman*, 85 NY2d 609, 620-621 [1995]; *see People v Perry*, 70 NY2d 626, 628 [1987] *affg on op below* 123 AD2d 492, 492-493 [1986]; *People v Bearden*, 290 NY 478, 482-483 [1943]; *People v Grogan*, 260 NY 138, 143-144 [1932]). The Court has since noted, however, that "dangerous speeding" can constitute "criminally culpable risk-creating conduct" that falls within the purview of the modern statutes (*People v Boutin, supra* at 697). In that regard, the Second Department has explained that while the older Court of Appeals cases establish that merely exceeding the posted speed limit does not constitute criminal negligence, those

cases do not hold that "in order to sustain a conviction for criminally negligent homicide in a case in which the principal item of evidence consists of proof of the defendant's use of excessive speed, the prosecution must always prove some other traffic law violation unrelated to the defendant's rate of speed" (*People v Senisi*, 196 AD2d 376, 379 [1994]). Therefore, the rule that proof of speed alone will not support a finding of criminal negligence is "decisive only in that extremely rare case" where there is no additional proof regarding, for example, "the presence or position of other vehicles, the presence or position of pedestrians, the condition or width of the roadway, the condition of the defendant's car, the lighting conditions, the presence or absence of obstructions to the defendant's field of vision, the physical condition of the defendant himself, the rate of acceleration, or any of a myriad of other factors" (*id.* at 379-380; *see e.g. People v Ricardo B., supra* at 236 [speeding while drag-racing]; *People v Rooney*, 57 NY2d 822, 823 [1982] [speeding and crossing the center line of a highway]; *People v Haney, supra* at 336 [speeding and running a red light]; *People v Guglielmo*, 30 AD3d 830, 832 [2006], *lv denied* 7 NY3d 813 [2006] [speeding in foggy conditions and driving on wrong side of road]; *People v Seger*, 168 AD2d 951, 951 [1990], *lv denied* 77 NY2d 882 [1991] [speeding while swerving out of lane and failing to observe bicyclist]; *see generally People v Armlin*, 6 NY2d 231, 233 [1959] [speeding and crossing center line sufficient to uphold reckless driving conviction]).

Here, the People presented evidence that defendant drove an estimated 72 miles per hour into a downhill curve through a section of road with a maximum posted speed limit of 55 miles per hour. In addition and contrary to defendant's argument that there is no evidence of any blameworthy conduct by defendant other than his exceeding the posted speed limit, the People presented proof that defendant ignored hazard signs recommending a speed limit of 40 miles per hour for negotiating the curve, causing him to cross the center line and ultimately lose control of his vehicle. Indeed, while the People were not required to demonstrate any additional traffic infractions to sustain the criminally negligent homicide conviction, defendant does not challenge his additional convictions of, among other things, reckless driving,[1] failure to keep right and driving left of a double yellow line. In our view, even if the People had presented

---

1. Reckless driving is defined by statute as "driving or using any motor vehicle . . . in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway" (Vehicle and Traffic Law § 1212). It should be noted that convic-

nothing further, this evidence was sufficient to establish "dangerous speeding" and to sustain defendant's convictions of criminally negligent homicide and assault (*People v Boutin*, 75 NY2d 692, 697 [1990], *supra*).

In addition, we note that the People further submitted evidence that defendant failed to ensure, as the holder of a class DJ license is required to do except in circumstances not present here, that all occupants of his vehicle were wearing seat belts and that no more than two passengers were under the age of 21 (*see* Vehicle and Traffic Law § 501-b [1]). Mindful that the purpose of the criminally negligent homicide statutes is to "provide an offense applicable to conduct which is obviously socially undesirable" (*People v Haney*, 30 NY2d 328, 334 [1972], *supra*), we note that the restrictions on class DJ licenses were imposed by the Legislature for the purpose of "limiting [teenagers'] exposure to hazardous driving situations" (Sponsor's Mem, 2002 McKinney's Session Laws of NY, at 2114). The Legislature determined that the restrictions were necessary in response to highway safety research indicating that the crash rate is four times higher for teenagers than for adults and that such crashes are the number one cause of teenagers' deaths as a result of "the propensity of young drivers to take risks, their belief that they are invincible and their susceptibility to peer pressure" (Sponsor's Mem, 2002 McKinney's Session Laws of NY, at 2114; *see* Letter from Dept of Transp, Bill Jacket, L 2002, ch 644, at 14; Letter from State Assn of PBAs, Bill Jacket, L 2002, ch 644, at 16). In other words, the restrictions target conduct that is socially undesirable and dangerous when performed by 16 and 17 year olds and has been shown to lead to preventable deaths. The restrictions are thus designed to "promote the safe operation of vehicles" by young drivers with the expectation that highway safety will be enhanced overall (Letter from Dept of Transp, Bill Jacket, L 2002, ch 644, at 14). In our view, defendant's failure to comply with those restrictions—in particular, driving with more than the number of people under the age of 21 that the Legislature has deemed safe[2] —relates directly to his physical operation of the vehicle and, in conjunction with

tions for reckless driving and criminal negligence arising out of the same conduct are not necessarily inconsistent—a defendant may act recklessly with respect to one result (interference with the free use of a highway) and negligently with respect to a different result (death) (*see e.g. People v Trappier*, 87 NY2d 55, 58-59 [1995]).

2. The cases relied upon by defendant for the proposition that the violation of a statute requiring drivers to obtain licenses will not constitute negligence per se are inapposite (*see Almonte v Marsha Operating Corp.*, 265 AD2d 357 [1999]; *Dance v Town of Southampton*, 95 AD2d 442 [1983]; *Hanley*

his dangerous speeding, constituted "blameworthy conduct creating or contributing to a substantial and unjustifiable risk of [his passengers'] death[s]" and physical injury when they were ejected from his vehicle during the crash (*People v Boutin, supra* at 696; *see People v Ricardo B.*, 73 NY2d 228, 236 [1989], *supra*; *People v Rooney*, 57 NY2d 822, 823 [1982], *supra*; *cf. People v Perry*, 70 NY2d 626, 628 [1987], *supra*).

In sum, given the evidence presented by the People, there was a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). Moreover, " 'weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony,' " we cannot say that the verdict was against the weight of the evidence (*id.* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]).

Turning to the remaining issues, we reject defendant's assertion that errors in County Court's instructions mandate a new trial. The court's charge, "when read as a whole, . . . fairly instructed the jury on the correct principles of law to be applied to the case and does not require reversal" (*People v Ladd*, 89 NY2d 893, 896 [1996]; *see* CJI[NY]2d PL § 120.00 [3]; § 125.10; *see also People v Drake*, 7 NY3d 28, 33-34 [2006]). Contrary to the dissent's conclusion that defendant was prejudiced because

---

*v Albano*, 20 AD2d 644 [1964]). Here, it is undisputed that defendant was properly licensed and, unlike the statutes at issue in the cited cases, the restriction on the number of passengers contained in Vehicle and Traffic Law § 501-b does specify the correct manner of driving a vehicle and, thus, creates a standard of care bearing on negligence (*see Dalal v City of New York*, 262 AD2d 596, 597-598 [1999]; *cf. Dance v Town of Southampton, supra* at 447-449). With respect to the failure to ensure that his passengers were wearing seat belts, we note that while such conduct has been deemed to constitute negligence under certain circumstances (*see Baker v Keller*, 241 AD2d 947, 947-948 [1997]; *Costello v Marchese*, 137 AD2d 482, 483 [1988]; *see generally Hamilton v Purser*, 162 AD2d 91, 92-93 [1990]), defendants are generally statutorily exempted from civil liability for injuries caused by that failure (*see* Vehicle and Traffic Law § 1229-c [8]). Nevertheless, although defendant's failure here to ensure that his passengers were wearing seat belts may not relate to the correct method of operating a vehicle and is not central to our determination that he acted with criminal negligence, we are required to consider all of the circumstances surrounding his blameworthy conduct in determining whether his failure to perceive a substantial and unjustifiable risk was "a 'gross deviation' from reasonable care" (*People v Boutin*, 75 NY2d 692, 696 [1990], *supra*; *see People v Haney, supra* at 335). That is, although defendant's failure to ensure that his passengers were wearing seat belts is not necessary to our determination that he was criminally negligent, that failure is a relevant factor in weighing the blameworthiness of his negligent conduct detailed above (*see People v Senisi*, 196 AD2d 376, 379-380 [1994], *supra*).

the court did not instruct the jury that violations of the junior license restrictions were not relevant to the question of whether he was criminally negligent, the restriction on the number of passengers does relate to the physical manner of operating a vehicle, as explained above (*see Dalal v City of New York*, 262 AD2d 596, 597-598 [1999]). Moreover, even assuming that the junior license violations cannot constitute direct evidence of negligence, there is no dispute that those violations were joinable here and properly tried along with the charges involving criminal negligence (*see* CPL 200.20 [2]). Inasmuch as the trier of fact " 'must evaluate the actor's failure of perception and determine whether, *under all the circumstances*, it was serious enough to be condemned' " (*People v Haney*, 30 NY2d 328, 335 [1972], *supra* [emphasis added] [citations omitted]; *see People v Ricardo B., supra* at 236), the court did not err in refusing to instruct the jury to *ignore* the circumstances under which defendant's dangerous speeding and the accident itself occurred. Further, while the dissent also takes issue with County Court's denial of defendant's request to charge that excessive speed alone is insufficient to sustain a finding of criminal negligence, such a charge was unwarranted in this case given the additional evidence beyond excessive speed submitted by the People at trial and detailed above. In our view, it cannot be said that the charge "impermissibly reduced the People's burden of proof and authorized the jury to convict on findings that did not, in truth, satisfy the requirements of Penal Law § 125.10" and § 120.00 (3) (*People v Ladd, supra* at 900 [Titone, J., dissenting]).

Finally, we reject as meritless defendant's contentions that County Court abused its discretion by admitting into evidence his noncustodial statements made immediately after the accident (*see generally People v Petty*, 7 NY3d 277, 286 [2006]) or in denying him youthful offender status (*see* CPL 720.20 [1] [a]; *People v Allen*, 259 AD2d 835, 836 [1999]).

Cardona, P.J. and Crew III, J., concur.

Mugglin, J. (dissenting). We respectfully dissent. Assuming, arguendo, that *dangerous* speed (*see* dicta in *People v Boutin*, 75 NY2d 692, 697 [1990]) can support a conviction for criminally negligent homicide while *excessive* speed alone is insufficient (as the majority opinion correctly points out), we conclude that other factors must exist to elevate excessive speed to dangerous speed before the prosecution has demonstrated "criminally culpable risk-creating conduct" (*id.* at 697) and that such conduct must be found in the manner and circumstances in which the vehicle is being physically operated (*see id.* at 696-697). Here, the prosecutor relied, in part, on defendant's violation of the

conditions of his junior license (class DJ). That uncontested proof established that defendant operated the vehicle with more than two passengers under 21 years of age who were not members of his immediate family and he did not insure that all passengers had buckled their seat belts (*see* Vehicle and Traffic Law § 501-b [2]). County Court denied defense counsel's request that the court charge that excessive speed alone is insufficient to sustain a finding of criminal negligence and that violations of the terms of defendant's class DJ license were irrelevant to the manner in which he drove the car. Both requests, in our view, should have been granted because the People demonstrated, not only with their proof, but in their opening statement and summation, that the proof of criminal negligence consisted of speed, coupled with violations of the license restrictions.

Despite the laudatory purpose expressed in the legislative findings when these conditions were added to junior licenses, we do not accept that the Legislature intended for those conditions to result in a situation where a speeding 16 or 17 year old could be convicted of criminally negligent homicide when the same conduct would not support such a conviction if engaged in by persons 18 years of age or older. While the majority sets forth other possible exacerbating factors that might lead to a finding of criminal culpability,* the degree to which the jury erroneously relied on violations of the conditions of the class DJ license cannot be ascertained from this record. Accordingly, we would reverse and remit for a new trial.

Lahtinen, J., concurs. Ordered that the judgment is affirmed.

---

* By this statement, we do not concede that legally sufficient evidence exists to support a finding of criminally negligent homicide—only that the other Vehicle and Traffic Law convictions cannot be addressed because defendant took no appeal from them. Nevertheless, it should be observed that the reckless driving, failure to keep right, crossing the double yellow line and speeding convictions all emanate from defendant having operated the vehicle at an excessive speed. Moreover, one questions, under the circumstances presented herein, how defendant could be criminally negligent by failing to perceive his conduct was dangerous while simultaneously driving recklessly because he perceived his conduct to be dangerous, yet ignored the danger.