■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD PARIS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Juviler, J.), rendered July 1, 1986, convicting him of criminally negligent homicide and operating a motor vehicle while his license was suspended, upon a jury verdict, and imposing sentence.

Ordered, that the judgment is modified, on the facts, by reversing the conviction of criminally negligent homicide, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

The defendant was convicted of the crime of criminally negligent homicide based upon his involvement in an automobile accident which occurred at approximately 2:50 A.M. on July 31, 1984, near the intersection of Coney Island Avenue and Kings Highway in Brooklyn. The unusual circumstances which preceded this accident were described at trial by two eyewitnesses.

According to both witnesses, the defendant's vehicle was proceeding down Coney Island Avenue, at a safe speed, without headlights, when it suddenly accelerated and veered to the left. The car crossed over a double yellow line and onto the sidewalk, striking a sign and then colliding with a telephone booth. The most peculiar aspect of the account provided by these two witnesses is that it appeared to both of them that no one was driving the vehicle. One witness testified that he "could see right through the car", and that, although he saw the inside of the car "I didn't see nobody". The other witness testified that "[t]here was nobody behind the wheel of the car".

Immediately after the accident, the defendant was found lying in a position from which it could be inferred that he had been the operator of the vehicle at the time it went out of control. A young woman was removed from the passenger side of the vehicle and later died as a result of injuries sustained during the collision. The defendant was subsequently arrested, tried, and convicted of criminally negligent homicide and operating a motor vehicle while his license was suspended.

We preface our consideration of the verdict in the present case by reiterating the recognition of our duty to apply two discrete standards of appellate review. In evaluating the People's evidence, our concern is not only with the legal sufficiency of such proof, but also with the separate question of whether as a matter of fact the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]; 470.20 [2]; *People v Bleakley,* 69 NY2d 490). With respect to review of the facts we may not simply substitute our own collective opinion as to the defendant's guilt for the opinion implicit in the jury's verdict *(People v Bleakley, supra,* at 495). In the present case, however, we find, with all due deference to the jury's verdict, that, as a matter of fact, the prosecution failed to prove the defendant's guilt of criminally negligent homicide beyond a reasonable doubt. That is, the verdict was against the weight of the evidence.

In order to establish the defendant's guilt of criminally negligent homicide, the prosecution was obligated to prove that the defendant engaged in conduct which resulted in the death of another person, and that the defendant failed to perceive the substantial and unjustifiable risk that his conduct would result in the death *(see,* Penal Law §§ 125.10, 15.05 [4]). The essence of criminally negligent homicide is the criminal actor's "failure to perceive the risk [of death]" *(People v Warner-Lambert Co.,* 51 NY2d 295, 303, *cert denied* 450 US 1031; *People v Stanfield,* 36 NY2d 467, 470). Furthermore, "[t]he risk [of death] must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]).

For centuries, the common-law courts have distinguished between ordinary negligence which should not form the basis of a criminal charge, and negligence so egregious as to be deserving of criminal punishment *(see, People v Angelo,* 246 NY 451, 455, and cases cited therein). No precise verbal formulation has yet been found which would permit a reviewing court readily to distinguish, in "the hundreds of varying circumstances that may arise" *(People v Angelo, supra,* at 457) between that type of conduct which constitutes ordinary negligence, "that is, negligent conduct arising from carelessness, inadvertence, lack of skill, competence or foresight" *(People v Eckert,* 2 NY2d 126, 130), and that more culpable type of conduct which justifies the imposition of criminal liability. "[W]hether negligence is culpable is a question of judgment. Ordinarily for the judgment of the jury, as is the question

whether negligence exists at all. But in the one case as in the other it may become a question of law" *(People v Angelo, supra,* at 457).

Several cases involving automobile accidents illustrate the degree of negligence which is sufficient to warrant criminal sanctions. In *People v Soto* (44 NY2d 683), for example, the defendant was engaged in a "drag race", and was operating his vehicle at an excessive rate of speed. The recent case of *People v Ricardo B.* (130 AD2d 213) also involved a fatal "drag race", as did the case of *People v Abbott* (84 AD2d 11). In *People v Rooney* (57 NY2d 822, 823), the defendant's guilt was premised upon proof that he drove his vehicle at an excessive rate of speed on the wrong side of the road. In *People v Haney* (30 NY2d 328, 336), the Court of Appeals held that a prima facie case of criminally negligent homicide had been established where it was proved that the defendant's vehicle struck a pedestrian at an intersection after the defendant failed to obey a red traffic signal. In *People v Battease* (124 AD2d 807, 809), the defendant was proved to have been operating his vehicle in excess of 70 miles per hour, and was also found to have had a blood alcohol level of .05%. In *People v Prentice* (91 AD2d 1202), the defendant was a professional truck driver who was operating a truck at an excessive rate of speed in poor driving conditions, and who was unable to bring his truck to a stop at an intersection due, in part, to a defect in the brakes which should have been known to him.

In contrast are those cases in which the evidence was deemed legally insufficient to sustain the verdict of guilt. Most important among these is *People v Perry* (70 NY2d 626, *affg* 123 AD2d 492), the facts of which are quite similar to the facts of the case at bar. In *People v Perry (supra),* the evidence consisted primarily of proof that the defendant's vehicle had been traveling at the excessive rate of speed of 80 miles per hour prior to the accident. The vehicle then veered off the highway and crashed. The Court of Appeals affirmed the holding of the Appellate Division, Fourth Department, that the evidence of guilt was legally insufficient.

Proof of driving in excess of the speed limit, without more (e.g., proof of dangerous road conditions) is insufficient to establish criminal negligence *(see, People v Eckert, supra,* at 130, citing *People v Walker,* 296 NY 740; *People v Bearden,* 290 NY 478). The result in *Perry (supra)* seems to confirm the continued vitality of that dictum. This principle is further illustrated in *People v Beiter* (77 AD2d 214), in which a divided court (Hancock, Jr., J., dissenting) held that the proof

of the defendant's guilt was insufficient where it was shown that the defendant was operating her vehicle at 60 miles per hour in a 40-mile-per-hour zone, in an area where one ought reasonably to have expected the presence of pedestrians.

In the case now under review, there is evidence that the defendant permitted the vehicle under his control not only to accelerate to an excessive rate of speed, but also to cross onto the wrong side of the road. This proof arguably brings the facts of this case more in line with those of *People v Rooney (supra)* and *People v Haney (supra)* than with those of *People v Perry (supra)*. However, it is also necessary to consider whether the acceleration and deviation of the vehicle were deliberate, that is, whether the defendant was consciously driving his vehicle in this dangerous manner. If the acceleration of the vehicle and its precipitous departure from its original course were shown to have been accomplished knowingly by the defendant driver, then his guilt of criminally negligent homicide would be clear. However, as a matter of fact, we conclude from all the circumstances revealed in the record that the sudden swerving and acceleration of the vehicle, which occurred immediately prior to the fatal crash, were the result of the defendant's having lost control of the vehicle. The central question, then, is whether this loss of control was itself the product of some negligent act or omission on the part of the defendant.

With respect to this question, there is evidence that, prior to the accident, the defendant driver was not correctly positioned in the driver's seat, but was instead slumped to one side. However, it is far from clear as to *when* the defendant adopted this dangerous position. If the evidence had established that, prior to his loss of control over the vehicle, the defendant—for whatever reason—had been consciously driving his car from a recumbent position, so as to be invisible to the witnesses, then his guilt of criminally negligent homicide would be beyond question. However, the far more reasonable inference to be drawn from the evidence is that the defendant was not consciously attempting to drive from such a position, but rather that he either sank to that position after having fallen asleep or unconscious, or that he assumed that position as the result of some perceived emergency. While it might have been inferred that the defendant fell asleep as the result of being under the influence of drugs or alcohol, there is no direct evidence of the fact, and we find that any inference of alcohol or drug abuse is not warranted.

In sum, the evidence at trial does not prove that the

defendant driver consciously engaged in any sort of conduct which, wittingly or unwittingly, resulted in the creation of an unjustifiable risk of death. Apart from the proof of the defendant's nonuse of headlights, which by itself would not constitute criminal negligence *(see generally, People v Frisbie,* 114 AD2d 587), there is no proof that the defendant driver committed any negligent act with respect to the operation of his vehicle until the moment when, for unknown reasons, he apparently lost control of it. Under these circumstances, we find that the prosecution failed to meet its burden of establishing beyond a reasonable doubt the defendant's guilt of criminally negligent homicide, and the jury's verdict on this count of the indictment must be set aside.

We have reviewed the defendant's remaining contentions, and find them to be without merit. The judgment under review is therefore modified, and as so modified, is affirmed. Bracken, J. P., Brown and Spatt, JJ., concur.

Weinstein, J., concurs in part and dissents in part and votes to affirm the judgment appealed from, with the following memorandum: While I concur with the majority's conclusion with respect to the defendant's conviction of operating a motor vehicle while his license was suspended, it is my opinion that my learned colleagues of the majority have erred in dismissing the count of criminally negligent homicide against the defendant. Bearing in mind that a conviction for the crime of criminally negligent homicide necessitates proof of conduct beyond mere carelessness, it was a question of fact for the jury to determine whether the defendant failed to perceive a risk of substantial and unjustifiable character and whether that failure constituted a gross deviation from the ordinary standard of care *(People v Haney,* 30 NY2d 328, 333; *People v Battease,* 124 AD2d 807; Penal Law § 15.05 [4]; § 125.10). In the instant case, the jury's verdict was amply supported by the evidence.

The evidence clearly established, as was borne out by the position of the bodies after the impact, that the defendant had been the driver of the vehicle at the time of the accident. Moreover, a neighbor of the deceased testified that on July 30, 1984, she had observed the defendant driving the deceased's vehicle with the deceased seated on the passenger's side. As per the testimony of the two eyewitnesses to the incident, the subject vehicle was proceeding without its headlights on. Inasmuch as the defendant driver was in a position where he was not visible to outsiders, it is unlikely that he was able to see the road ahead of him. The vehicle, which was initially

proceeding at a normal speed, began to steadily accelerate and crossed a double yellow line in the center of Coney Island Avenue just prior to the impact. The jury could rationally conclude that the defendant's conduct in accelerating a vehicle without looking where he was going constituted a gross deviation from the standard of care which an ordinary person would be expected to exercise and presented an unjustifiable and substantial risk of death. His actions did in fact cause the death of his passenger.

Nor was there any evidence to support the theory that the defendant was suddenly rendered unconscious or incapable of perceiving the danger. A defendant is not entitled to the benefit of every speculative possibility imaginable. On the contrary, a reasonable hypothesis must be based on evidence adduced at trial rather than on sheer speculation. There was no evidence in the record to support the defendant's hypothesis that he had lost consciousness due to carbon monoxide poisoning prior to the accident. The defendant was conscious immediately after the accident and was sufficiently coherent to direct his rescuer to "Get the girl". Additionally, the defendant complained to a paramedic at the scene of chest pain and difficulty breathing. With respect to a possible mechanical malfunctioning of the subject vehicle, the representative of the police Accident Investigation Squad who testified at trial was unable to conduct any tests on the subject vehicle with the exception of a check of the brake system, due to the extensive damage to the vehicle. There was no indication of brake failure. The witness further testified that even if a carbon monoxide leak had been present, it would have been unlikely that the occupants would suffer carbon monoxide poisoning provided that the vehicle was moving and a car window was open. There was testimony in the instant case as to both the movement of the vehicle and the fact that the window on the driver's side was open.

Stated succinctly, the jury could have reasonably rejected the theory that the defendant's slumped-over position was due to a loss of consciousness since that would not account for the fact the the car at first traveled in its proper lane at a safe speed with no one visible behind the wheel. Nor does that theory account for the car's sudden acceleration since it is reasonable to infer that a loss of consciousness would have caused a decrease in pressure to the accelerator rather than a sharp increase.

Other potential explanations for the incident were ruled out by the eyewitnesses' testimony that the accident had occurred

on a clear night when the road condition was dry. Nor was there any evidence of potholes, obstructions, animals or skid marks on the road.

Viewing the evidence adduced at trial in a light most favorable to the prosecution and giving it the benefit of every reasonable inference to be drawn therefrom, I conclude that the evidence was legally sufficient to establish the defendant's guilt (see, People v Contes, 60 NY2d 620; People v Androvett, 135 AD2d 640). Moreover, upon the exercise of my factual review power, and recognizing the role of the jury in assessing credibility and the weight to be afforded to a witness's testimony, I am satisfied that the jury's verdict was not against the weight of the evidence (see, CPL 470.15 [5]). In the face of such evidence, I refuse to speculate with regard to potentially innocuous explanations for the defendant's conduct. I find that the combination of circumstances here, including the absence of headlights, the failure to maintain a proper driving position and the sudden acceleration, is sufficient to support the jury's determination (see, People v Rooney, 57 NY2d 822) and distinguishes this case from People v Perry (70 NY2d 626).

Having examined the defendant's remaining contentions and finding them to be either unpreserved for appellate review or without merit, I vote to affirm the judgment of conviction.