OPINION OF THE COURT
Curtis J. Farber, J.
Defendant is charged by superseding information, dated September 23, 2016, with the following nine offenses: (1) Administrative Code of the City of New York § 19-190 (a): right-of-way (traffic infraction); (2) Administrative Code § 19-190 (b): right-of-way/causes physical injury (unclassified misdemeanor); (3) Penal Law § 220.03: criminal possession of a controlled substance in the seventh degree (class A misdemeanor); (4) Vehicle and Traffic Law § 1146 (a): drivers to exercise due care (traffic infraction); (5) Vehicle and Traffic Law § 1151 (a): pedestrian’s right-of-way in crosswalk (traffic infraction); (6) Vehicle and Traffic Law § 1227 (1): consumption or possession of alcoholic beverages in certain motor vehicles (traffic infraction); (7) Vehicle and Traffic Law § 509 (1): unlicensed operator (traffic infraction); (8) Vehicle and Traffic Law § 511 (1) (a): aggravated unlicensed operation of a motor vehicle in the third degree (unclassified misdemeanor); and (9) Vehicle and Traffic Law § 511 (2) (a) (ii): aggravated unlicensed operation of a motor vehicle in the second degree (unclassified misdemeanor).
Defendant moves for: (1) dismissal of the charge of Administrative Code § 19-190 (b) upon the ground that it is unconstitutional and preempted by state law; and (2) severance of the charge of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03).[1]
By responding affirmation dated November 4, 2016, the People oppose defendant’s motion. By responding affirmation *805 dated October 24, 2016, the Corporation Counsel, appearing on behalf of the City of New York, opposes defendant’s first requested basis for relief. The New York State Attorney General, by letter to the court dated August 30, 2016, declined to intervene. (Executive Law § 71.)
The Accusatory Instrument
The accusatory instrument alleges that on May 4, 2016, at 9:03 p.m., defendant, while operating a motor vehicle, made a left turn at the corner of Stanley and Van Siclen Avenues, in Brooklyn, striking a pedestrian who was walking in the crosswalk with the right-of-way. Hospital records revealed that the pedestrian suffered physical injuries, including a laceration to the head and a fracture to the cheek. At the time of the accident, the defendant was driving without a valid license, it having been previously revoked upon his conviction for driving while intoxicated. A half empty bottle of Hennessy alcohol was recovered from defendant’s car, and a quantity of crack cocaine was recovered from defendant’s pocket.[2]
*807 Administrative Code § 19-190
Administrative Code § 19-190 was passed by the New York City Council (hereinafter the legislature), in 2014, as part of an initiative aimed at reducing traffic-related injuries.
Administrative Code § 19-190, “Right of way,” reads as follows:
“a. Except as provided in subdivision b of this section, any driver of a motor vehicle who fails to yield to a pedestrian or person riding a bicycle when such pedestrian or person has the right of way shall be guilty of a traffic infraction, which shall be punishable by a fine of not more than fifty dollars or imprisonment for not more than fifteen days or both such fine and imprisonment. In addition to or as an alternative to such penalty, such driver shall be subject to a civil penalty of not more than one hundred dollars which may be recovered in a proceeding before the environmental control board.
For purposes of this section, ‘motor vehicle’ shall have the same meaning as in section one hundred twenty-five of the vehicle and traffic law.
“b. Except as provided in subdivision c of this section, any driver of a motor vehicle who violates subdivision a of this section and whose motor vehicle causes contact with a pedestrian or person riding a bicycle and thereby causes physical injury, shall be guilty of a misdemeanor, which shall be punishable by a fine of not more than two hundred fifty dollars, or imprisonment for not more than thirty days or both such fine and imprisonment. In addition to or as an alternative to such penalty, such driver shall also be subject to a civil penalty of not more than two hundred fifty dollars which may be recovered in a proceeding before the environmental control board. For purposes of this section, ‘physical injury’ shall have the same meaning as in section 10.00 of the penal law.
“c. It shall not be a violation of this section if the failure to yield and/or physical injury was not caused by the driver’s failure to exercise due care.”
I. Constitutionality of Administrative Code § 19-190 (b)
Defendant contends that the right-of-way law violates a defendant’s right to due process, under the United States and New York Constitutions (US Const Amend XIV; NY Const, art *808 I, § 6), by its use of a civil negligence standard within a criminal statute. (People v Sanson, 52 Misc 3d 980 [Crim Ct, Queens County 2016].) Defendant maintains the legislature’s intent that the crime not be one of strict liability is evidenced by its inclusion of the “due care” element. Defendant argues that subdivision (c), which states that a person is not guilty of the misdemeanor crime of right-of-way if the failure to yield, or the physical injury to a pedestrian, was not caused by the driver’s failure to exercise “due care,” improperly looks to the state of mind of a reasonable man, rather than to the state of mind of the particular defendant. Defendant argues that by doing so, the statute violates the long-standing principle that when a crime requires criminal culpability, a defendant’s wrongdoing must be shown to have been consciously committed. (Elonis v United States, 575 US —, 135 S Ct 2001, 192 L Ed 2d 1 [2015].)
Both the People and the Corporation Counsel agree with the defendant that Administrative Code § 19-190 (b) is not a strict liability crime. Although they concede civil negligence is not one of the designated culpable mental states required for criminal liability under our Penal Law, they maintain that a civil negligence standard of “culpability” may be an element of a New York crime so long as it is contained in a state or local law outside our Penal Law. The People and the Corporation Counsel cite to cases from other jurisdictions which have authorized criminal liability based on civil negligence in support of their argument that the right-of-way law does not violate due process under either the United States or New York State Constitutions.
In order to find a statute unconstitutional, the party seeking to nullify it must overcome the presumption of constitutionality that favors legislative enactments. (People v Tichenor, 89 NY2d 769, 773 [1997].) To do so, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Id.) To analyze defendant’s contention that the misdemeanor crime within Administrative Code § 19-190 is unconstitutional, this court must first ascertain whether the failure to exercise “due care” set forth in subdivision (c) is an element of Administrative Code § 19-190 (b), and if it is, whether the phrase “failure to exercise due care” denotes a civil negligence or a criminal negligence standard. If a criminal negligence standard is properly inferred, then the statute does not violate defendant’s due process rights under the United States or New York *809 Constitutions. On the other hand, if statutory construction mandates a finding that the “due care” standard is a civil negligence standard contained within a criminal statute, the question to be resolved then is whether such a statute can nonetheless pass constitutional muster.
A. Element versus Proviso
When ascertaining whether exclusionary language in a statute creates an exception that must be affirmatively pleaded and proved as an element of a crime, as opposed to a proviso that need not be pleaded or proved, the court must first determine whether it is necessary to go outside the statute itself to find the legal standard underlying the referenced exclusion. The general rule is that if the defining statute contains the exception, the accusatory instrument must allege that the crime is not within the exception. But when the exception is found outside the statute, the exception generally is a matter for the defendant to raise in defense. (People v Kohut, 30 NY2d 183, 187 [1972].)
In People v Santana (7 NY3d 234 [2006]), the Court of Appeals analyzed the language in the criminal contempt in the second degree (Penal Law § 215.50 [3]) statute, which states that a person is guilty of contempt by intentional disobedience or resistance to the lawful process or other mandate of a court “except in cases involving or growing out of labor disputes as defined by subdivision two of section seven hundred fifty-three-a of the judiciary law.” The Court reasoned that the exclusionary language was not an element of the crime because it required going outside of the Penal Law, to the Judiciary Law, which delineates multiple circumstances which constitute labor disputes. Santana concluded it was unreasonable to believe the legislature intended the People to negate each of the alternatives specified in the Judiciary Law in every criminal contempt prosecution. On the other hand, where the exception is fully within the statute itself, as in the “home or place of business” exception to the crime of criminal possession of a loaded firearm (former Penal Law § 265.02 [4], now § 265.03 [3]), and reference to another statute is not required, the Court of Appeals has found that the legislature intended the language to create an exception which must be proved by the People in the same manner as any other element of the offense. (People v Rodriguez, 68 NY2d 674, 675 [1986], revg on dissenting op of Lazer, J.P. 113 AD2d 337, 343-348 [2d Dept 1985].) On rare occasions, when the exclusionary language is particularly broad and is *810 uniquely within the defendant’s knowledge, it will not constitute an element of the offense, even if the language of exclusion is within the statute itself. In People v Davis (13 NY3d 17 [2009]), in interpreting a New York City Parks and Recreation Department rule (56 RCNY 1-03 [c] [2]), which prohibits persons from being in city parks after their posted closing times, the language within the statute, that no police officer or Parks Department employee had authorized a defendant to ignore a posted closing time, was determined to be so broad that it would require the People to go to “intolerable lengths” were it an element for them to plead and prove, and thus, could not have been so intended by the legislature. (Id. at 32.)
Here, the language of Administrative Code § 19-190 (c), that “[i]t shall not be a violation of this section if the failure to yield and/or physical injury was not caused by the driver’s failure to exercise due care,” is a precise and limited exclusion, fully contained within the statute. Additionally, subdivision (c) is specifically referenced within subdivision (b) itself, which begins with the language disqualifying a defendant from liability: “[e]xcept as provided in subdivision c of this section.” Further, the issue of whether a defendant failed to exercise “due care” involves the same type of evidence required to be proved by the People in many vehicular crimes which is readily determined by the circumstances surrounding the accident itself, including the speed of defendant’s vehicle, whether any traffic lights or signs were disobeyed, the lighting and weather conditions, or whether alcohol or drug use was detected. Hence, this court finds it was the legislature’s intent that the failure to exercise “due care” is an element of the crime to be proved by the People. This is further supported by the fact that the New York State statute upon which Administrative Code § 19-190 was modeled, Vehicle and Traffic Law § 1146, undispu-tably includes “due care” as an element of the offense by its requirement that “every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, pedestrian, or domestic animal upon any roadway.”[3]
*811 B. Administrative Code § 19-190 (b) Requires a Culpable Mental State
Based upon the inclusion of a “due care” element in Administrative Code § 19-190 (b), this court concludes that the legislature did not intend this crime to be one of strict liability. Instead, the crime was meant to contain an element of mental culpability. Upon a review of United States Supreme Court precedent, our state’s appellate case law, and the rules of statutory construction, this court finds that the mental culpability element in this statute is one of “criminal negligence.”
In the recent United States Supreme Court decision of Elonis v United States (575 US —, 135 S Ct 2001, 192 L Ed 2d 1 [2015]), the Supreme Court reversed a defendant’s conviction under 18 USC § 875 (c), for the crime of transmitting in interstate commerce “any communication containing any threat to kidnap any person or any threat to injure the person of another,” because the trial court used a civil negligence standard in its charge to the jury. Elonis reaffirmed the principle that a statute’s omission of a culpable mental state does not mean that one does not exist. (575 US at —, 135 S Ct at 2009, 192 L Ed 2d at 12, citing Morissette v United States, 342 US 246, 250 [1952].) Although the statute at issue in Elonis did not, on its face, specify that a defendant must have a particular mental state, the Supreme Court found the defendant’s awareness of some wrongdoing was a required element. Therefore, the trial court’s instruction to the jury, over defendant’s objection, which used a reasonable person standard, was error.[4]
*812 Elonis made clear that the use of a tort law standard of negligence at a criminal trial is inconsistent with established requirements for criminal conduct. Elonis noted that
“a ‘reasonable person’ standard is a familiar feature of civil liability in tort law, but is inconsistent with ‘the conventional requirement for criminal conduct—awareness of some wrongdoing.’ Having liability turn on whether a ‘reasonable person’ regards the communication as a threat—regardless of what the defendant thinks—‘reduces culpability on the all-important element of the crime to negligence,’ and we ‘have long been reluctant to infer that a negligence standard was intended in criminal statutes.’ ” (575 US at —, 135 S Ct at 2011, 192 L Ed 2d at 15 [citations omitted].)
Therefore, where, as here, the statute was not meant to be a crime of strict liability, in order to conform the statute to the requirements of due process, an appropriate scienter requirement must be read into the criminal statute. (See People v Smith, 79 NY2d 309, 312 [1992]; see also Morgenthau v Khalil, 73 AD3d 509, 510 [1st Dept 2010]; People v Wood, 58 AD3d 242, 252-253 [1st Dept 2008], lv denied 12 NY3d 823 [2009].)
C. New York Law Establishes Criminal Negligence is the Scienter Element in Administrative Code § 19-190
The term “due care” is not defined in Administrative Code § 19-190. The parties theorize that the use of the term “due care” indicates a civil tort definition of negligence was meant to apply to both the civil remedies and the criminal provisions within the statute. However, a proper application of the rules of statutory construction does not support such a conclusion.
“Where a penal statute is such that it is a hybrid of civil and criminal remedies capable of definite severance, that part of it which relates to and grants a civil remedy must be read separate and distinct from that part of it which is penal in character and viewed as a separate and independent enactment and construed and interpreted accordingly.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 275, Comment.)
Because Administrative Code § 19-190 is a hybrid statute, which may be enforced as either a civil remedy before the Environmental Control Board, or as a penal statute prosecuted in the criminal courts, the term “due care” may have different meanings in these different forums. When the action is *813 prosecuted in the criminal courts, the doctrines applicable to penal statutes must be applied.
As detailed below, the appellate courts of our state have consistently held that the use of a civil negligence standard is inappropriate in a criminal prosecution. Upon a review of the case law and relevant statutory and constitutional principles, this court concludes that the “due care” language in this statute denotes a criminal negligence element when the charge is prosecuted in a criminal court.
While the words “due care” are often used in tort law, they are not exclusive to the civil context. In People v Caban (51 AD3d 455 [1st Dept 2008], revd on other grounds 14 NY3d 369 [2010]), in reviewing the sufficiency of the trial evidence in support of a conviction for criminally negligent homicide (Penal Law § 125.10), the Appellate Division referred to the “due care” requirement within criminal negligence. In Caban, the defendant drove her car in reverse into a pedestrian right-of-way where she struck and killed an elderly pedestrian. Noting that the defendant was charged “with having failed to use due care to avoid an unintended result” the Court found that the jury could rationally have concluded, beyond a reasonable doubt, that defendant’s failure to perceive the risk of death created by her conduct satisfied the requirement of Penal Law § 15.05 (4), the criminal negligence standard (51 AD3d at 456).
Penal Law § 15.05 (4) provides:
“A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.”
As illustrated by Caban, the use of the term “due care” in Administrative Code § 19-190 (c) does not alter the longstanding doctrine that a civil negligence standard is not the applicable standard in a criminal case.[5] There is no basis to conclude, based solely upon the use of the words “due care” in *814 the statute, that the legislature meant to bring about such a drastic change in the historical distinction between criminal liability and civil liability.
Our appellate courts have long held that to impose criminal liability upon a defendant for causing injury to another, something more is required than the bare negligence which might be sufficient to support a civil action for monetary damages. In People v Angelo (246 NY 451 [1927]), the Court of Appeals reversed a conviction for manslaughter in the second degree because the trial court refused to charge the jury that slight negligence was not culpable negligence. Angelo defined criminally “culpable” negligence as “something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others.” {Id. at 457.) The Court traced this distinction between criminal culpability and civil tort liability to precedents going back as early as the year 1664. {Id. at 455.)
In People v Haney (30 NY2d 328 [1972]), the Court of Appeals addressed the distinction between civil liability and criminal culpability in a criminally negligent homicide prosecution. In Haney, the defendant sped through a red light and struck and killed a pedestrian. The defendant had failed to yield the right-of-way to the pedestrian who was already in the intersection. In analyzing the sufficiency of the grand jury presentation in support of the indictment for criminally negligent homicide, the Court discussed the difference between reckless homicide, criminally negligent homicide, and civil negligence. The Court noted “[a] persistent problem, faced by the courts and legislatures alike, was the formulation of the ‘extra’ qualities that distinguish unintended homicides, which give rise to criminal liability, from those which, at most, produce civil liability for negligence.” {Id. at 331-332.) A criminally negligent offender’s liability is said to arise only from a culpable failure to perceive a risk. “It [criminal negligence] is, however, appreciably greater than that required *815 for ordinary civil negligence by virtue of the ‘substantial and unjustifiable’ character of the risk involved and the factor of ‘gross deviation’ from the ordinary standard of care.” (Id. at 333.) “Criminal negligent homicide, in essence, involves the failure to perceive the risk in a situation where the offender has a legal duty of awareness.” {Id. at 334.)
The Court of Appeals also discussed the distinction between civil and criminal liability for negligent conduct in People v Ricardo B. (73 NY2d 228 [1989]). In Ricardo B., the defendant was convicted of criminally negligent homicide after a woman was killed when the defendant, who was drag racing, crashed into her vehicle. The Court stated that
“[flirst, criminal liability cannot be predicated upon every careless act merely because its carelessness results in another’s death. Second, criminal negligence involves the failure to perceive the risk in a situation where the offender has a legal duty of awareness. Third, liability for criminal negligence should not be imposed unless the inadvertent risk created by the conduct would be apparent to anyone who shares the community’s general sense of right and wrong. Finally, the finder of fact must evaluate the actor’s failure of perception and determine whether, under all the circumstances, it was serious enough to be condemned.” (Id. at 235-236.)
In People v Boutin (75 NY2d 692 [1990]), the Court of Appeals once more discussed the inapplicability of the civil negligence standard to criminal trials. In Boutin, the defendant was driving his truck on an overcast, rainy night, when he hit a police car which was stopped, with emergency lights flashing, in the right-hand traffic lane behind a disabled tractor trailer. In reversing defendant’s conviction for criminally negligent homicide, the Court stated:
“In the present case, there is no question that defendant’s failure to see the vehicle stopped in the lane ahead of him resulted in the fatal accident. That failure may well constitute civil negligence. But the proof does not establish criminal negligence. . . . Rather, it establishes only that defendant inexplicably failed to see the vehicle until he was so close that he could not prevent the collision. Though it resulted in two tragic deaths, that unexplained failure, without more, does not constitute criminally negligent homicide” (id. at 697-698).
*816 Recently, in People v Cabrera (10 NY3d 370 [2008]), the Court of Appeals reiterated that criminal liability for negligent conduct requires more than the mere failure to perceive the risk. Instead, the defendant’s conduct must show serious blameworthiness which caused the risk. In Cabrera, the defendant’s excessive speed when navigating a tricky downhill curve was described as certainly negligent and blameworthy, but it failed to rise to the level of criminal negligence. The standard jury instruction for criminally negligent homicide now cites to Cabrera as its source for the language which discusses the distinction between civil and criminal negligence, as follows:
“You may notice from that definition that criminal negligence is not the same type of negligence you may be familiar with from a civil lawsuit seeking a money judgment. The carelessness required for criminal negligence is significantly more serious; it must be such that its seriousness would be apparent to anyone who shares the community’s general sense of right and wrong.” (CJI2d[NY] Penal Law § 125.10.)
This rejection of the civil negligence standard in criminal cases has been reiterated numerous other times by our appellate courts. (See e.g. People v Ladd, 89 NY2d 893 [1996]; People v Paul V.S., 75 NY2d 944 [1990]; People v Bearden, 290 NY 478 [1943]; People v Givens, 268 AD2d 240 [1st Dept 2000], lv denied 94 NY2d 947 [2000]; People v Simmons, 31 AD3d 1143 [4th Dept 2006]; People v Futterman, 86 AD2d 70 [4th Dept 1982].) The Second Department, in People v Paris (138 AD2d 534, 535-536 [2d Dept 1988]), in reversing a conviction for criminally negligent homicide, made clear why ordinary civil negligence is inapplicable to criminal proceedings. Paris explained the historical distinction between civil and criminal negligence as follows:
“For centuries, the common-law courts have distinguished between ordinary negligence which should not form the basis of a criminal charge, and negligence so egregious as to be deserving of criminal punishment {see, People v. Angelo, 246 NY 451, 455, and cases cited therein). No precise verbal formulation has yet been found which would permit a reviewing court readily to distinguish, in ‘the hundreds of varying circumstances that may arise’ (People v. Angelo, supra., at 457) between that type *817 of conduct which constitutes ordinary negligence, ‘that is, negligent conduct arising from carelessness, inadvertence, lack of skill, competence or foresight’ (People v Eckert, 2 NY2d 126, 130), and that more culpable type of conduct which justifies the imposition of criminal liability. ‘[W]hether negligence is culpable is a question of judgment.’ ” (138 AD2d at 535.)
Thus, it is clear that under New York common law and the New York and United States Constitutions, a civil negligence standard is not properly applied to a criminal prosecution.
Finding Administrative Code § 19-190 to include a definition of defendant’s lack of “due care” in accordance with criminal negligence is consistent with proper statutory interpretation, which favors construing a statute to conform to constitutional requirements when possible, rather than finding a legislative enactment to be unconstitutional. The rules of statutory construction dictate that statutes are presumed to be valid and constitutional and should not be stricken as unconstitutional unless they clearly violate the state or federal constitution. A statute should be construed, if possible, to uphold its constitutionality. (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a], [b], [c].) “A change in long established rules of law is not deemed to have been intended by the Legislature in the absence of a clear manifestation of intention.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 153.) Where the intent of the legislature is not clear, the courts are to apply established rules of construction to discover the true intent of the legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 91).
In People v Finkelstein (9 NY2d 342 [1961]), the Court of Appeals rejected the defendants’ arguments that a statute’s failure to expressly contain a scienter element, where one is required by common law, necessitates a finding that the statute violates a defendant’s right to due process under the Constitution of the United States. Finkelstein made clear that the mere omission of an express scienter element within a statute need not be construed as an attempt by a legislature to eliminate that common-law element of the crime. Instead, the appropriate scienter element should be read into the statute. Finkel-stein instructs the lower courts that “[n]o statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with fundamental law.” (Id. at 345.) In Finkelstein, the statute at issue was former *818 Penal Law § 1141, which provided in relevant part that “[a] person who sells ... or has in his possession with intent to sell . . . any obscene . . . book . . . [is] guilty of a misdemeanor.” The Court indicated that the appropriate scienter element required for the crime was the possessor’s awareness of the contents of the materials. By reading in this scienter element, the statute was found to be constitutional.
In order to preserve the constitutionality of Administrative Code § 19-190 (b), this court finds it is appropriate to read the statute’s use of the term “due care” to incorporate the criminal negligence mens rea of Penal Law § 15.05 (4). The criminal negligence standard will be charged to the trial jury as an element of the offense. The omission of the words “with criminal negligence” from the statute does not require a finding that the statute is constitutionally infirm. Instead, as in Elonis and Finkelstein, it is proper to read the statute’s requirement of “due care” to incorporate the proper scienter element, being the definition of culpable negligence from the criminal law. This standard requires the finder of fact to look to the defendant’s own awareness of the risk, rather than looking solely to the degree of care that a reasonable person would have exercised under similar circumstances.
II. Preemption
A. Penal Law Article 15 and Administrative Code § 19-190 (b)
Defendant argues Administrative Code § 19-190 is preempted by state law based upon concepts of conflict and field preemption. Conflict preemption occurs when a local government enacts a statute that directly clashes with an already existing state law. (DJL Rest. Corp. v City of New York, 96 NY2d 91 [2001].) Field preemption occurs when a local government passes a law involving a subject matter that the State has shown its intent to regulate pervasively (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395 [2003]).
Defendant contends that the Penal Law preempts Administrative Code § 19-190 (b) for two reasons. First, defendant argues field preemption, contending that the culpable mental states for criminal statutes in New York State are limited to those set forth in article 15, section 15.05 of the Penal Law, which does not include civil negligence. Secondly, defendant argues that Administrative Code § 19-190 (b) is in direct conflict with Penal Law § 15.05. The People and the Corporation Counsel argue that the culpable mental states within the *819 Penal Law are limited to that chapter itself, and that local governments are free to pass laws with additional mental states, including civil negligence, if they so choose.
Initially, as previously discussed, Administrative Code § 19-190 (b) is not a strict liability crime. Penal Law § 15.10 indicates the difference between strict liability crimes and crimes involving a culpable mental state as follows:
“The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of ‘strict liability.’ If a culpable mental state on the part of the actor is required with respect to every material element of an offense, such offense is one of ‘mental culpability.’ ”
Because Administrative Code § 19-190 (b) requires more than the voluntary act of driving and making contact with a pedestrian or bicyclist who has the right-of-way in an intersection, by requiring a failure to exercise “due care,” it is conceded by the parties and the Corporation Counsel that it was meant to be a crime of mental culpability. Further, Penal Law § 15.15 (2) mandates that, unless a statute defining a crime clearly indicates a legislative intent to impose strict liability, the statute is to be construed to be a crime of “mental culpability.” Penal Law § 15.15 (2) expressly states that it applies to “offenses defined both in and outside this chapter.”[6] Therefore, because Administrative Code § 19-190 (b), being an offense defined outside the Penal Law, is not clearly designated as a crime of strict liability, its mens rea must conform to the Penal Law’s definition “mental culpability.” Penal Law § 15.00 (6) defines “mental culpability.” It states: “a ‘[c]ulpable mental *820 state’ means ‘intentionally’ or ‘knowingly’ or ‘recklessly’ or with ‘criminal negligence,’ as these terms are defined in section 15.05.” Accordingly, Penal Law § 15.15 (2) requires this court to read the “due care” language of Administrative Code § 19-190 (b) as one of the Penal Law’s culpable mental states, specifically criminal negligence, in order to give effect to the intention of the legislature.
This court has found that the definition of criminal negligence in Penal Law § 15.05 (4) is properly read into Administrative Code § 19-190 (b). By so reading the statute, it is in conformance with the Penal Law, it does not preempt the field of mental culpability set forth by the State, does not conflict with state law, and does not violate defendant’s right to due process under either the Federal or State Constitution.
B. Vehicle and Traffic Law Does Not Preempt Administrative Code § 19-190 (b)
Lastly, defendant argues that Administrative Code § 19-190 (b) is preempted by New York State law because the conduct it regulates is already governed by state law, in this case, by the Vehicle and Traffic Law provisions set forth at Vehicle and Traffic Law § 1146. Defendant maintains that the State has evinced its intent to occupy this area of legislation, and therefore a local law regulating the same subject matter is inconsistent with the state legislature’s transcendent interest in regulating matters of statewide importance. (See Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395 [2003].)
New York State Constitution, article IX, § 2 (c) provides, in pertinent part:
“In addition to powers granted in the statute of local governments or any other law, . . . (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: . . .
“(10) The government, protection, order, conduct, safety, health and well-being of persons or property therein.”
*821 The City of New York has the power to pass legislation regulating the safety of its citizens so long as the local law is not inconsistent with any state law already governing the same conduct, and so long as the local law does not seek to occupy a field of regulation for which the state has assumed full regulatory responsibility. In this case, Administrative Code § 19-190 (b) does not improperly preempt state law because state law expressly gives the City of New York the power to legislate in the area Administrative Code § 19-190 regulates, the right-of-way of vehicles and pedestrians on the public highways within the City of New York, through Vehicle and Traffic Law §§ 1600 and 1642 (a) (10). Although Vehicle and Traffic Law § 1146 does regulate in the same area of law, relating to a driver’s duty to yield to pedestrians who have the right of way, in this particular case, the local law is not inconsistent with the preexisting state law. Moreover, even if the laws were in conflict, it would be the state law which would yield to the local law, based on an express grant of authority to the City of New York in this area.
Vehicle and Traffic Law § 1600 indicates that local authorities have the authority to pass laws regulating the use of the public highways in areas where a provision of the Vehicle and Traffic Law already exists, when expressly authorized to do so by another provision of the Vehicle and Traffic Law. In the current situation, Vehicle and Traffic Law § 1642 provides the City of New York with that very authority when regulating traffic on, or pedestrian use of, any highway in the City, including the right-of-way of vehicles and pedestrians pursuant to Administrative Code § 19-190.
Vehicle and Traffic Law § 1642 (a) (10), “Additional traffic regulations in cities having a population in excess of one million,” reads as follows:
“(a) In addition to the other powers granted by this article, the legislative body of any city having a population in excess of one million, may by local law, ordinance, order, rule, regulation or health code provision prohibit, restrict or regulate traffic on or pedestrian use of any highway (which term, for the purposes of this section, shall include any private road open to public motor vehicle traffic) in such city. The provisions shall be applicable to such local laws, ordinances, orders, rules, regulations, and health code provisions, provided, however, that *822 such local laws, ordinances, orders, rules, regulations and health code provisions shall supersede the provisions of this chapter where inconsistent or in conflict with respect to the following enumerated subjects: . . .
“10. Right of way of vehicles and pedestrians.” (Emphasis added.)
In Ferguson v Iqbal (33 AD3d 657 [2d Dept 2006]), which involved a personal injury action arising from a vehicle-pedestrian accident in Kings County, the trial court properly declined to charge the jury with Vehicle and Traffic Law § 1146, because that state provision was superseded, pursuant to Vehicle and Traffic Law § 1642, by New York City Traffic Regulation (34 RCNY) § 4-04 (d) (NYCTR), which governs the right-of-way of pedestrians in crosswalks.[7] (See also Deleon v New York City Sanitation Dept., 25 NY3d 1102, 1104-1105 [2015]; Medina v Delta Air Lines, Inc., 2011 WL 3625110, 2011 US Dist LEXIS 91174 [ED NY, Aug. 16, 2011, No. 09-CV-4018 (NGGXLB)].) In this case, even were Administrative Code § 19-190 (b) in conflict with the Vehicle and Traffic Law, it would supersede the Vehicle and Traffic Law in this area.
Motion to Sever Penal Law § 220.03: Criminal Possession of a Controlled Substance in the Seventh Degree
Defendant moves to sever the charge of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03) from the eight other counts in the superseding information, contending that his alleged possession of cocaine is not properly joined with the remaining charges under any of the provisions of Criminal Procedure Law § 200.20. Defendant argues that the other charged crimes occurred before the arrival of the police, but the cocaine possession did not occur until after defendant was no longer operating the vehicle, when he was subsequently searched by police. The People respond that the charge of Penal Law § 220.03 is properly joined with the remaining counts of the docket, pursuant to CPL 200.20 (2) (a).
The accusatory instrument indicates that Police Officer Mil-fort recovered a quantity of crack cocaine from defendant’s *823 pocket. Officer Milfort’s training and experience in recognizing crack cocaine and its packaging is set forth in the information, and a laboratory report, filed with the accusatory instrument, indicates cocaine was present in a ziplock bag recovered from the defendant.
Pursuant to CPL 100.45 (1): “[w]here appropriate, the provisions of sections 200.20 and 200.40, . . . governing consolidation of indictments for trial purposes, apply to informations, to prosecutor’s informations, and to misdemeanor complaints.” CPL 200.20 (2) provides: “Two offenses are joinable’ when: (a) They are based upon the same act or upon the same criminal transaction, as that term is defined in subdivision two of section 40.10.” CPL 40.10 (2) defines a “criminal transaction” as
“conduct which establishes at least one offense, and which is comprised of two or more or a group of acts (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.”
In this case, defendant’s possession of cocaine is properly joined with the remaining counts, pursuant to CPL 200.20 (2) (a). Defendant is alleged to have been in possession of crack cocaine while operating his motor vehicle, just as he is alleged to have been in possession of a half empty bottle containing an alcoholic beverage which was observed in defendant’s vehicle after the accident. In People v Boyd (272 AD2d 898 [4th Dept 2000], lv denied 95 NY2d 850 [2000]), the defendant’s possession of crack cocaine was properly joined with charges relating to a burglary and petit larceny which had been committed the preceding day. The crack cocaine was found on defendant’s person during a strip search the day after his arrest for the burglary. The drug possession crime was deemed so closely related in time, place and date, to the burglary and petit larceny charges, to have been part of the same criminal transaction. As in Boyd, the charge of Penal Law § 220.03 herein is properly joined with the remaining counts, pursuant to CPL 200.20 (2) (a). Accordingly, defendant’s motion to sever is denied.
Conclusion
Defendant’s motion for dismissal of the charge of Administrative Code § 19-190 (b), upon the ground that it is unconstitu *824 tional and preempted by state law, is denied. Defendant’s motion for severance of the charge of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03) is denied.

. Defendant filed and served his omnibus motion on July 25, 2016. On September 26, 2016, the People filed and served a superseding information. By letter filed and served on October 17, 2016, defendant amended his previous motion, by withdrawing his motion to dismiss the charges of Vehicle and Traffic Law § 511 (1) (a) and (2) (a) (ii) for facial insufficiency, and by withdrawing his motion to dismiss a charge of Vehicle and Traffic Law § 1198 *805 (9) (d), circumvention of an interlock device, which is no longer charged in the superseding instrument.

. The accusatory instrument reads as follows:
“That on or about May 4, 2016, at approximately 9:03 p.m., at the corner of Stanley Avenue and Van Siclen Avenue, in the County of Kings, State of New York, deponent [Police Officer Milfort] states:
“That deponent observed video surveillance depicting the defendant, at the above time and place, a public street, driving a 2013 Nissan Altima NY License Plate No. . . . and that while defendant made a left turn, defendant struck a pedestrian in the crosswalk with a signal to cross causing said pedestrian to roll off the hood of defendant’s vehicle and land on the ground striking pedestrian’s head.
“Deponent further states that, shortly after the above time and at the above location, deponent observed the front windshield of the above-described Nissan Altima to be shattered.
“Deponent was informed by the defendant’s own statement that, in sum and substance, defendant was driving, defendant made a turn, and the pedestrian jumped out of nowhere.
“Deponent further states that deponent is informed by the official records of the Fire Department of the City of New York that, shortly after the above time, EMS personnel received a call regarding a pedestrian who had been struck by a vehicle, responded to the above location, observed [the named pedestrian] laying unresponsive in the middle of the street, and transported [the pedestrian] to Brookdale Hospital Medical Center.
*806 “Deponent further states that deponent is informed by the official records of Brookdale Hospital Medical Center that, shortly after the above time, [the pedestrian] suffered, in sum and substance, loss of consciousness, an acute subdural hematoma on the right side, a subarachnoid hemorrhage, a laceration to the head, and a fracture to the cheek.
“The deponent further states that deponent observed a more than half empty bottle containing an alcoholic beverage, namely Hennes[s]y, inside defendant’s vehicle and that deponent has had professional training as a police officer in the identification of alcoholic beverages, recognized the odor emanating from the container as that of an alcoholic beverage, and that in deponent’s opinion, the container in this case contained an alcoholic beverage.
“Deponent further states that deponent conducted a check of the official, computerized Department of Motor Vehicles Driving Record(s) (pursuant to [Vehicle and Traffic Law § ] 201) relating to defendant.
“Deponent observed said record(s) to indicate that, at the above time, defendant was driving with his privilege to do so having been revoked in the State of New York.
“Deponent further states that deponent’s basis for believing that the defendant had reason to know that his license was suspended is as follows: the above-described New York State Department of Motor Vehicles Computer check revealed that defendant’s license was revoked for driving with a .08% BAC in that defendant was convicted of driving while intoxicated ([Vehicle and Traffic Law § ] 1192 [2]) in Brooklyn Criminal Court on 5/22/14.
“Deponent further states that the New York State Department of Motor Vehicles mails a notice of suspension to any such person at their last known address.
“Deponent is informed by the official records of the Department of Motor Vehicles that a notice of suspension or revocation, with unique Postal ID #061145398, was mailed to the last known address of the defendant.
“Deponent further states that deponent observed defendant in possession of a quantity of crack cocaine in that deponent recovered said quantity of crack cocaine from defendant’s pocket.
“Deponent further states that deponent has had profession [al] training as a police officer in the identification of crack cocaine, and by professional training and experience as a police officer, is familiar with common methods of packaging crack cocaine and the ziplock bags used to package the substances in this case are a commonly used method of packaging such substances.
“Based on the foregoing, in deponent’s opinion, the substances in this case are crack cocaine.
“Deponent further states that, as an NYPD officer, deponent is the custodian of the above mentioned video surveillance and that said video surveillance was kept and maintained in the ordinary course of business.”

. Vehicle and Traffic Law § 1146, “Drivers to exercise due care,” reads, in relevant part:
“(a) Notwithstanding the provisions of any other law to the contrary, every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, pedestrian, or domestic animal upon any roadway and shall give warning by sounding the horn when necessary . . .
*811 “(b) 1. A driver of a motor vehicle who causes physical injury as defined in article ten of the penal law to a pedestrian or bicyclist while failing to exercise due care in violation of subdivision (a) of this section, shall be guilty of a traffic infraction punishable by a fine of not more than five hundred dollars or by imprisonment for not more than fifteen days or by both such fine and imprisonment.”

. The trial court instructed the jury that
“[a] statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.” (575 US at —, 135 S Ct at 2007, 192 L Ed 2d at 11.)

. It bears noting, that when used in the civil setting, the “due care” element, therein defined as “that care which is exercised by reasonably prudent drivers,” need only be proved by either a preponderance of the evidence, or by substantial evidence, depending on the civil forum, burdens which are *814 inapplicable in criminal court. (See Matter of Russell v Adducci, 140 AD2d 844, 845-846 [3d Dept 1988]; Deitz v Huibregtse, 25 AD3d 645 [2d Dept 2006].) Further, the actions in a civil setting involve questions of comparative negligence between the driver and the pedestrian. (See Garner v Fox, 265 AD2d 525 [2d Dept 1999]; PJI 2:75, 2:76 [civil jury charges].) Moreover, reviewing the pattern instruction for Vehicle and Traffic Law § 1146 when used in a civil proceeding, it is clear that the comparative negligence analysis which is employed is inapplicable to a criminal trial.

. The fell text of Penal Law § 15.15 (2) reads as follows:
“Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both in and outside this chapter.”

. NYCTR § 4-04 (d) reads: “Operators to exercise due care. Notwithstanding other provisions of these rules, the operator of a vehicle shall exercise due care to avoid colliding with any pedestrian.”